WILSON *v*. DAVIS

5-3552                                          389 S. W. 2d 442

Opinion Delivered April 19, 1965.

[Rehearing denied May 17, 1965.]

*Arnold & Hamilton, By: Thomas S. Streetman,* for appellant.

*George Howard, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal involves an interpretation of certain provisions of the Probate Code. John T. Wilson died on March 5, 1963, leaving surviving him a widow, Odelle M. Wilson, appellant herein, and several brothers and sisters, and also children of deceased brothers and sisters, as collateral heirs, some of whom are appellees herein.[1] The widow petitioned for appointment as administratrix of the estate, and the court

directed that notice of such appointment be given to the collateral heirs; this notice was given to all including appellees. Thereafter, certain claims were presented to the administratrix, approved by her, and filed with the court. None of the appellees filed a request for special notice as provided in Ark. Stat. Ann. § 62-2108 (Supp. 1963).[2] Among the claims allowed was that of the Federal Land Bank Association, such claim being approved in the amount of $2,645.06, and being allowed on June 3, 1963. The court, in approving this claim (along with some others), found that Lucinda Poe, who had made request for special notice, had been notified, and that ''no further notice need be given to any other person * * *.'' The order allowing this claim was not appealed, nor has any motion to vacate the order ever been filed. On that same date, the administratrix, appellant herein, filed her inventory of the estate, listing personal property valued at $4,415.37, and real property valued at $1,495.00. No objections or exceptions were filed to the inventory until after the estate had been closed and distribution made and approved. On October 22, 1963, appellant filed a petition with the court, setting out that the estate did not contain sufficient assets to satisfy the dower and statuory rights of the widow or to pay expenses of administration and claims in full; that she (appellant) would individually pay all claims and expenses of administration in exchange for a distribution to her absolutely of all remaining assets, including the real estate.[3] On October 29, 1963, the court found, ''that the claims previously allowed by the court against the estate, the interest of the surviving widow free of claims of creditors, and the expenses of administration are in excess of the assets in hands of the Administratrix;

[1]Appellees are Robert Wilson and Zemri Wilson, brothers of the deceased, Mayme Davis and Effie Smith, sisters of the deceased, Lealle (Luella) Thompson and Eliza Brewer, nieces, and Lawrence Wilson, a nephew.

[2]Lucinda Poe, a sister, was the only heir who asked for special notice, and she was notified of all proceedings. This sister is not a party to the litigation.

[3]The petition recites that the real estate has been appraised at $1,500.00, and that a copy of the appraisal is attached to and made a part of the petition. However, the record does not contain a copy of the appraisal.

that the Administratrix is entitled to and ought to be allowed a fee in the amount of $300.00 for services as Administratrix; that the Administratrix ought to be allowed and ordered to pay a fee in the amount of $350.00 to William S. Arnold for services rendered to the estate; that the widow, Odelle M. Wilson has offered to accept a distribution to her of the assets remaining in the hands of the Administratrix in full satisfaction of the remaining dower and statutory claims of the widow and in addition to indemnify the estate against further liability on account of the approved but unpaid claim of Federal Land Bank of St. Louis in the amount of $2645.06, and the expenses of administration and attorney and administrator's fees; that it would be in the best interests of the decedent's estate and all persons interested therein that such settlement and distribution be made".

Appellant was thereupon authorized to distribute and deliver to herself individually all assets remaining in her hands as administratrix, "including but not limited to the following real and personal property". The order then describes the real estate heretofore referred to, and numerous items of personal property. The court found that such distribution "shall further be deemed settlement in full of all dower and statutory claims of the widow on account of the estate of the decedent as reflected by the inventory previously filed herein".

In November, 1963, the administratrix filed her final accounting. A date for hearing was fixed by the court (January 20, 1964), and notice of such hearing was given to all collateral heirs, including each of the appellees. Notice that the accounting had been filed was duly published. On January 20, no objections having been filed, the court (acting through a special judge) approved the account, including the prior order of distribution heretofore referred to, and discharged the administratrix and her bondsman. On the same day, a petition was filed, seeking authority to sell an interest in some stock, which had belonged to John T. Wilson, and the court authorized that Wilson's interest be sold for $4.45, and directed that this amount should be paid to appellant individually.

On April 22, 1964, appellees filed a petition to set aside the order approving the accounting and distribution, alleging that the distribution of assets to the widow was not in accordance with statutory provisions, and that the administratrix omitted from her settlement certain properties which belonged to the estate, *viz*, ''approximately 40 head of cattle, certain United States Savings Bonds and other personal property''. It was further alleged that, because of unavoidable casualty, appellees were prevented from appearing and entering their protests. After the filing of two amendments to the petition by appellees, and the filing of a motion to dismiss by appellant, proof was taken from some of the appellees, and the court held that a *prima facie* case had been made to the effect that the deceased was the owner of some 30 head of cattle of the value of approximately $4,000.00 at the time of his death, and the record reflects that these cattle were not scheduled in the inventory or final account. The court set aside its approval of the final accounting, set aside the order authorizing the widow to take all assets in exchange for her assumption of the debts of the estate, specifically disallowed credits which had previously been approved under Schedules '' C '' and '' E '', and likewise set aside approval of the claim of the Federal Land Bank. The estate was reopened, and the court directed that appellant, Odelle M. Wilson, continue as personal representative. Petitioners were granted twenty days from the date of the order to file written objections to the final account of the administratrix. From this order, appellant bring this appeal.

At the outset, let it be stated that, if the trial court had found that fraud had been committed by the appellant, the order entered herein by the Probate Court could have been upheld in its entirety (provided that the order was not against the preponderance of the testimony). Ark Stat. Ann. § 62-2912 (Supp. 1963) provides:

''Upon the filing of receipts or other evidence satisfactory to the court that distribution has been made as directed in the order of final distribution the court shall enter an order discharging the personal representative and his surety from further liability or accountability with

respect to the administration. Such order or an order of discharge entered under Section 161 [62-2902] b *shall be final, except, upon a petition being filed within three years of the entry thereof, it may be set aside for fraud in the settlement of the account of the personal representative.*[4]

The court, in its order, made no finding that fraud had been committed, and it would not appear that there was any thought of fraud, since, upon ordering the estate reopened, the court directed that appellant continue to serve as administratrix. We point out that the jurisdictional notices (appointment of personal representatives, and hearing on final accounting) were given appellees, and the court specifically found, in approving various other orders, that notice was not necessary, since no demand for notice had been filed. We agree that the court was within its authority in approving these orders and claims without notice, except in one instance, which will be discussed later.

We think the court erred in disallowing some of the credits under Schedule ''C''. As pointed out, there was no finding of fraud, and appellees took no appeal, nor filed any timely exceptions to any item allowed.

Ark. Stat. Ann. § 62-2016 (Supp. 1963) deals with appeals from orders of the Probate Court, and it is obvious, from the language of that section, that appellees did not act in a timely manner. For that matter, Schedule ''C'', in part, claims credit for funds expended for the widow's support ($500.00), and statutory allowance ($1,000.00), and the schedule also reports that she received the household goods. Under Ark. Stat. Ann. § 62-2501 (Supp. 1963), the widow was entitled to these allowances, except that she was only entitled to $500.00 as her statutory allowance against creditors. However, no creditor has complained of the allowance, and appellant was entitled to the $1,000.00 as against appellees. The other credits under Schedule ''C'' are not proper since they were awarded appellant under the order entered by the court on October 29, 1963, and which order will be subsequently discussed.

[4]Emphasis supplied.

We think it was also error for the court to set aside approval of the claim of the Federal Land Bank. The claim was allowed, and no exceptions were filed to its allowance, nor was any appeal taken. There does not appear to be any dispute that the Land Bank held a proper claim against the estate, and was due to be paid. While not shown by the record, it is entirely possible that this claim has already been paid, in which event the Land Bank probably has already surrendered the note and mortgage upon which the claim was based. Of course, if, after further testimony it should develop that this was a spurious claim, the Probate Court still has the authority to set it aside for fraud.

We affirm the court's action in setting aside the order of October, 1963, in which all property was vested in the administratrix individually upon her agreement to assume and pay all claims and expenses of administration. Appellant contends that her application was not a petition for allotment of dower, but rather was based on Ark. Stat. Ann. § 62-2403 (Supp. 1963), which reads as follows:

"When it appears to be for the best interest of the estate or in the case of an action for wrongful death, for the best interest of the estate or widow and next of kin, the personal representative, upon the authorization of or approval by the court, may effect a compromise settlement of any debt or obligation due or owing to the estate, whether arising in contract or tort, or extend, renew or in any manner modify the terms of any obligation owing to the estate. If the personal representative holds a mortgage, pledge or other lien upon property of another person, he may, in lieu of foreclosure, accept a conveyance or transfer of such encumbered assets from the owner thereof in satisfaction of the indebtedness secured by such lien, if it appears for the best interest of the estate and if the court shall so order."

We do not agree that this section is applicable. Perhaps, technically speaking, the petition filed by the widow (wherein she set out that there was not sufficient money to pay debts of the estate, and offered to assume all debts if she were vested with all property) is not, strictly speak-

ing, a petition for allotment of dower; however, in the petition appellant does, *inter alia,* aver, that, as the surviving widow, she is entitled absolutely to one-half of all real and personal property as her dower interest, and the order, signed by the court, approving the petition, likewise provides that the compromise "shall further be deemed settlement in full of all dower and statutory claims of the widow on account of the estate of the decedent as reflected by the inventory previously filed herein." Ark. Stat. Ann. § 62-704 (1947) provides the manner of petitioning for dower, and requires that "all persons interested in the property shall be summoned to appear and answer the petition * * *." Admittedly, appellees were not summoned, or otherwise notified of the petition. It would hardly be logical to hold that a petition to vest *all* of the estate in appellant required no notice, but that a petition to vest only *half* of the estate in her required the service of a summons. We hold the court's action, in setting aside this order, to be proper.[5]

While we have stated that, with the exception of the order just discussed, the trial court had no authority to set aside the approval of the settlement, including claims allowed and statutory allowances granted, the court does have authority to reopen the administration for the purpose of determining the proper distribution of the personal property alleged to have been omitted from the settlement. This authority is contained in Ark. Stat. Ann. § 62-2913 (Supp. 1963).

Summarizing, the final settlement and distribution had been approved, and collateral heirs had been notified that the final accounting was set for hearing on January

---

[5]In affirming the court, relative to this order, we likewise affirm as to the court's disallowance of credits claimed under Schedule "E", since Schedule "E" seeks credit for the real estate distributed to appellant as per the court order of October 29, 1963. Actually, the setting aside of this order could work to the benefit of appellant, for, under the present order, she certainly could not take more property than is shown under the inventory filed; on the other hand, if there are other assets of the value of $4,000.00 in the estate, appellant likely will be entitled to some additional amount (since proper claims which she had assumed would be chargeable to the estate). But, if there is no additional amount, the court would likely reinstate the order of October 29, 1963.

20, 1964. Despite this fact, they took no action, either as to an appeal, or by filing exceptions, and it was not until four months later that a petition was filed, seeking to set aside the settlement. Under the Probate Code, their time to follow either course had expired.[6] The order of the court, however, to reopen the case for the purpose of determining disposition of the $4,000.00 not reported is affirmed, and we likewise affirm the court's finding that the order of October 29, 1963, should be set aside for the reason that appellees were not summoned as required by Ark. Stat. Ann. § 62-704 (Supp. 1963), heretofore referred to.

Nothing herein shall be construed as upholding the validity of any order, or the approval of any claim, if it develops during subsequent hearings that the approval of any order or claim was obtained through fraud practiced on the court.

It is so ordered.

---

[6]The committee (which prepared the Probate Code) commented that the order of final distribution should completely bar all persons who may have a right to object to any of the proceedings as to any matter which might be the basis of their objections. It does not bar third persons who would have no right to intervene in the proceedings or to object to the order.